WHATLEY KALLAS LLP
Joe R. Whatley, Jr. (To Apply *Pro Hac Vice*)
jwhatley@whatleykallas.com
Edith M. Kallas (To Apply *Pro Hac Vice*)
ekallas@whatleykallas.com
1180 Avenue of the Americas, 20th Fl.
New York, NY 10036
Tel: (212) 447-7060
Fax: (800) 922-4851

Henry Quillen (To Apply *Pro Hac Vice*)
hquillen@whatleykallas.com
159 Middle Street, Suite 2C
Portsmouth, NH 03801
Tel: (603) 294-1591
Fax: (800) 922-4851

Alan M. Mansfield (Of Counsel)
amansfield@whatleykallas.com
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Tel: (310) 684-2504
Fax: (855) 274-1888

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| DONNA WATSON, for herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OPTUMRX, INC.;<br>UNITED HEALTHCARE INSURANCE COMPANY, and<br>DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.:  8:16-cv-2106<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF:**<br><br>1) **ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) FOR VIOLATIONS OF ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C);**<br><br>2) **ERISA § 502(a)(2) AND (3), 29 U.S.C. § 1132(a)(2) AND (3) FOR VIOLATIONS OF ERISA § 406(b), 29 U.S.C. § 1106(b);**<br><br>3) **ERISA § 502(a)(2) AND (3), 29 U.S.C. § 1132(a)(2) AND (3) FOR VIOLATIONS OF ERISA § 404, 29 U.S.C. § 1104;** |

-1-

4) **ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) FOR VIOLATIONS OF ERISA § 702, 29 U.S.C. § 1182;**

5) **VIOLATION OF RICO, 18 U.S.C. §§ 1962(b), 1962(c);**

**DEMAND FOR JURY TRIAL**

Plaintiff, Donna Watson, on behalf of herself and all others similarly situated, by and through her attorneys, Whatley Kallas, LLP; Steel, Wright, Gray & Hutchinson, PLLC; the Poynter Law Group; and the Mauriello Law Firm, for this Class Action Complaint alleges the following as against OptumRx, Inc., UnitedHealthcare Insurance Company, and DOES 1-10, inclusive (collectively "Defendants"). Except as to the allegations of Plaintiff's experiences, which are based on personal knowledge, all other allegations are based on information and belief and are formed based on an inquiry reasonable under the circumstances. Such allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## I.   INTRODUCTION

1.     Plaintiff brings this action on behalf of herself and a class and subclass of similarly situated individuals located throughout the United States alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and the Racketeering Influenced and Corrupt Organizations Act ("RICO"). Plaintiff received prescription drug benefits through a welfare benefit plan that included an insurance policy issued by UnitedHealthcare Insurance Company ("UnitedHealthcare"). Plaintiff's pharmacy benefits are administered by UnitedHealthcare and OptumRx, Inc. ("Optum").

2.     Some prescriptions cost less than the patient's copayment, but Defendants conceal this material fact from plan members. Defendants then engage in improper self-dealing by pocketing the ill-gotten gains.

CLASS ACTION COMPLAINT                                      CASE NO.

3.     Defendants require their network pharmacies, such as Plaintiff's local pharmacist, to collect the entire copayment—even when the drug's cost is below the copayment—and pay Defendants the difference between the cost of the drug and the patient's payment. Defendants prohibit their network pharmacies from disclosing this fact to patients or alerting patients that they can pay less for the same medication by purchasing it at retail and not billing their insurance. These practices will be referred to as the "clawback scheme."

4.     Defendants' clawback scheme results in the patient paying the entire copayment and the Defendants collecting hidden additional payments. There is no sharing of costs between the patient and the plan when there is a pocketing of this clawback. It is therefore not a copayment, but an overpayment by the patient that is secretly pocketed by Defendants. Defendants' taking of this additional, undisclosed compensation violates ERISA and RICO.

## II.    PARTIES

5.     Plaintiff Donna Watson is a citizen and resident of Arkansas. She is covered by a health plan that provided through her husband's employer and administered by UnitedHealthcare and Optum. Ms. Watson received prescription drug coverage through this plan. Ms. Watson's health plan is subject to ERISA. Under the plan, Ms. Watson is obligated to make a copayment when filling a prescription.

6.     Optum is a California corporation with its principal place of business in Irvine, California. Optum is a pharmacy benefits manager ("PBM") and is typically the PBM for the coverage and policies provided by UnitedHealthcare. Specifically, Optum provided the PBM services for Ms. Watson's pharmacy benefit. From January 1, 2016 through September 30, 2016, Optum had revenues in excess of $44,000,000,000, up nearly 42% from 2015. Optum is an indirect subsidiary of UnitedHealth Group Incorporated ("UHG"). It is not a subsidiary or parent of UnitedHealthcare.

CLASS ACTION COMPLAINT                          CASE NO.

7.      UnitedHealthcare is a Connecticut company with its principal place of business in Hartford, Connecticut. UnitedHealthcare provides insurance coverage and administrative services across the country. UnitedHealthcare is an indirect subsidiary of UHG. It is not a subsidiary or parent of Optum.

8.      The true names, roles and/or capacities of Defendants named as DOES 1 through 10, inclusive, are currently unknown to Plaintiff and, therefore, are named as Defendants under fictitious names as permitted by the rules of this Court. Plaintiff will identify their true identities and their involvement in the wrongdoing at issue, as well as the specific causes of action asserted against them, if and when they become known.

### III.   JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to (a) 28 U.S.C. §1331, which provides for federal jurisdiction over civil actions arising under the laws of the United States; and (b) 29 U.S.C. §1132(e)(1) providing for federal jurisdiction over actions brought under Title I of ERISA.

10.     This Court has general personal jurisdiction over Defendant Optum because its principal place of business is in Irvine, California. This Court has specific personal jurisdiction over Defendant Optum because a substantial part of the events or omissions giving rise to Plaintiff's causes of action, including acts in furtherance, aid, or preparation of the alleged conspiracy with the other Defendants, occurred in California.

11.     This Court has specific personal jurisdiction over Defendant UnitedHealthcare because it directed its activities toward California through its interactions with Optum in furtherance of the clawback scheme. UnitedHealthcare is also subject to jurisdiction in California because it conspired with Optum, and any act done or declaration made by one of the conspirators in furtherance, aid, or preparation of the alleged conspiracy may be shown for jurisdictional purposes as evidence against fellow conspirators.

CLASS ACTION COMPLAINT                                    CASE NO.

12. Venue in this District is appropriate pursuant to 28 U.S.C. § 1391(b)(2) because of Optum's presence in this District, and because a substantial part of the events or omissions giving rise to Plaintiff's causes of action, including acts in furtherance, aid, or preparation of the alleged conspiracy with the other Defendants, occurred in this District.

## IV.    FACTUAL ALLEGATIONS

13. UnitedHealthcare issues insurance policies to groups and individuals, and provides administrative services to employers who offer welfare benefit plans to their employees. In exchange for payment of premiums (or administrative fees, in the case of plans for which UnitedHealthcare provides administrative services but does not provide insurance), UnitedHealthcare sometimes agrees to provide prescription drug benefits among its covered health services. The prescription drugs purchased by Plaintiff, and by the Class members, that are the subject of this action, are covered health services under plans or insurance policies issued or administered by UnitedHealthcare.

14. In addition to the premium payments and administrative fees it receives, UnitedHealthcare's plans and policies require Plaintiff and the Class members to contribute to the cost of prescription drugs by paying copayments, coinsurance, and deductibles, which together are sometimes called "patient responsibility."

15. Copayments are fixed dollar amounts that Plaintiff and Class members pay for certain covered health services, including prescription drugs. Coinsurance is the patient's share of the costs of a covered health service, calculated as a percent of the allowed amount for the covered health service. Deductibles are the amounts that Plaintiff and the Class members must pay before UnitedHealthcare begins to pay for the covered health services pursuant to the health insurance plans and policies.

16. UnitedHealthcare contracts with Optum to act as its PBM to administer its prescription drug benefits. UnitedHealthcare conspires with Optum to

ensure that Plaintiff and the Class members are frequently overcharged for prescription drugs.

17.    Defendants directly or indirectly contract with the pharmacies, which serve as providers in UnitedHealthcare's or Optum's pharmacy network.

18.    When a prescription is received by the pharmacy, the pharmacy sends certain information to Optum who, in turn, processes the claim pursuant to the patient's UnitedHealthcare plan or policy. Once processed, Optum instructs the pharmacy as to the amount it must collect from the patient. The amount Optum requires the pharmacy collect from the patient often exceeds the amount that UnitedHealthcare and/or Optum pay the pharmacy for the patient's prescription drug and results in the patient, like Plaintiff and the Class members, being overcharged for prescription drugs.

19.    The pharmacy does not set the amount that the patient pays for the prescription drug. Further, the pharmacy is required by UnitedHealthcare and/or Optum to collect the clawback and remit to UnitedHealthcare and/or Optum.

20.    UnitedHealthcare and/or Optum prohibits the pharmacies from disclosing the clawbacks to the patients or advising the patients of cheaper alternatives for the prescription drugs, such as purchasing the drugs at retail cost without using the benefits under their plan or policy.

21.    On or about May 5, 2016, Defendants acknowledged for the first time this clawback scheme and admitted that this was part of their "overpayment program."

22.    Defendants' clawback scheme particularly affects generic drugs and other drugs whose cost is often below the patient's copayment.

23.    During the past five years, when Plaintiff was covered by a UnitedHealthcare plan, Plaintiff was charged and paid a $15.00 copayment to purchase a drug known as Ramipril. As part of Defendants' unlawful scheme, Defendants contracted with the pharmacy that filled her prescription to pay the

CLASS ACTION COMPLAINT                                    CASE NO.

pharmacy $10.60 as reimbursement for the ingredient drug cost and $0.90 for the pharmacy fill fee, for a total reimbursement to the pharmacy of $11.50, for that Ramipril prescription. Unknown and hidden from Plaintiff during the time, Defendants required the pharmacy to (1) collect a $15.00 "copayment" from the plan member, (2) accept a reimbursement of $11.50 from Defendants for filling the prescription, and (3) pay as a clawback to Defendants the unlawful $3.50 spread between the supposed "copayment" and the actual reimbursement received by the pharmacy. Plaintiff estimates she has made 60 such payments over the course of five years. The transaction is depicted as follows:

| "Copayment" | $15.00 |
|---|---|
| Ingredient Cost | $10.60 |
| Pharmacy Fee | $0.90 |
| **Defendants' "Clawback"** | **$3.50** |

While these amounts may be small individually, if one considers the hundreds of millions of individual transactions Defendants engage in each year, the amounts in question become extremely material to Defendants.

24.    UnitedHealthcare and Optum are fiduciaries under employer-sponsored plans for which they administer prescription drug benefits. Under ERISA, a person is a fiduciary "to the extent . . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets. . . .," ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), or "he has any discretionary authority or discretionary responsibility in the administration of such plan," ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii). Thus, an entity is an ERISA fiduciary if it exercises discretionary authority or control in managing or administering the plan, or if it exercises any authority or control (discretionary or not) respecting management or disposition of plan assets. UnitedHealthcare and Optum have

implemented the clawback scheme through their discretionary authority or discretionary control over the management of Plaintiff's plan and others, and they manage the disposition of plan assets through the series of payments to and from pharmacies, as described above.

25. UHG stated in its 2015 Form 10-K, "We provide pharmacy care services through our OptumRx and UnitedHealthcare businesses. ... [O]ur pharmacy care services businesses provide services to sponsors of health benefit plans that are subject to ERISA. A private party or the DOL, which is the agency that enforces ERISA, could assert that the fiduciary obligations imposed by the statute apply to some or all of the services provided by our pharmacy care services businesses even where our pharmacy care services businesses are not contractually obligated to assume fiduciary obligations. In the event a court were to determine that fiduciary obligations apply to our pharmacy care services businesses in connection with services for which our pharmacy care services businesses are not contractually obligated to assume fiduciary obligations, we could be subject to claims for breaches of fiduciary obligations or claims that we entered into certain prohibited transactions."

## V. <u>TOLLING OF STATUTE OF LIMITATIONS</u>

26. The claims of Plaintiff and the Class are subject to equitable estoppel due to Defendants' concealment of the facts alleged herein until at least May 2016. Equitable tolling is based upon Plaintiff's and Class members' inability to obtain adequate information about the circumstances of these clawback practices to plead the claims alleged herein.

27. Defendants are estopped from relying on any statute of limitations defense because they purposefully concealed their wrongdoing.

CLASS ACTION COMPLAINT                                     CASE NO.

28.     Further, Plaintiff and the Class did not know, and reasonably could not have learned, the facts underlying their claims and Defendants' wrongdoing until shortly before filing this action.

## VI.   **DEFENDANTS' RICO VIOLATIONS**

29.      Defendants engaged in a scheme to obtain money by false pretenses, representations, or promises and a scheme to defraud in order to extract payments from Plaintiff and Class members in excess of the amount to which Defendants were entitled.

30.     In furtherance of their scheme, Defendants have caused pharmacies to overcharge Plaintiff and Class members and have failed to disclose the clawbacks they receive.

31.     Each   Plaintiff   and   Class   member   relies   upon   Defendants' representations, both express and implied, that they owe and that Defendants are entitled to collect the amount of coinsurance or copayment stated to pharmacies by paying the amount charged.

32.     Plaintiff and Class members did not know and had no reason to know that Defendants were collecting excessive coinsurance or copayment amounts.

33.     As a result, Plaintiff and Class members have paid more than they would have otherwise paid for their prescription drugs.

34.     Plaintiff, Class members and Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3).

### *Racketeering Allegations*

35.     Defendants acquired and maintained control of the Enterprise (defined below) as it related to the provision of pharmacy benefits to UnitedHealthcare's enrollees in terms of providing and/or charging for prescription drugs through a pattern of racketeering activity involving a scheme to obtain money by false pretenses and a scheme to defraud Plaintiff and Class members, in violation of 18 U.S.C. § 1962(b).

CLASS ACTION COMPLAINT                                    CASE NO.

36.     Defendants have participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity involving a scheme to obtain money by false pretenses and a scheme to defraud Plaintiff and Class members, in violation of 18 U.S.C. § 1962(c).

37.     Defendants have violated federal laws, including mail and wire fraud, 18 U.S.C. §§ 1341 and 1343, by utilizing or causing the use of the United States postal service, commercial interstate carrier, wire or other interstate electronic media in furtherance of their scheme to obtain money by false pretenses and their scheme to defraud.

38.     These predicate acts of mail and wire fraud were related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims, including Plaintiff and members of the Class.

39.     The predicate acts of racketeering activity were related to each other in furtherance of the scheme, amount to and pose a threat of continuing racketeering activity and therefore constitute a pattern of racketeering activity through which Defendants has violated 18 U.S.C. § 1962(b) and 18 U.S.C. § 1962(c).

40.     Defendants carried out their scheme through the "Enterprise": the pharmacies that fill the prescriptions at issue pursuant to a series of contractual relationships with Defendants. The Enterprise meets the requirements of 18 U.S.C. § 1961(4), 18 U.S.C. § 1962(b), and 18 U.S.C. § 1962(c). The Enterprise is engaged in the sale and administration of products in interstate commerce, including the provision of pharmacy services, as set forth above.

41.     While Defendants acquired, maintained control of, are associated with, and conducted or participated in the conduct of the Enterprise's affairs, Defendants have an existence separate and distinct from the Enterprise.

42.     The Enterprise is separate and distinct from the pattern of racketeering activity. However, the predicate offenses are related to the activities of the

Enterprise. The predicate acts taken in furtherance of Defendants' scheme necessarily relate to the Enterprise.

43.     The activities of the Enterprise are national in scope and the Enterprise has a substantial impact upon the economy and upon interstate commerce.

### *Predicate Acts*

44.     Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. § 1341 or 18 U.S.C. § 1343. As set forth herein, Defendants have engaged and continues to engage in conduct violating each of these laws.

45.     In order to carry out their scheme to obtain money by false pretenses and to defraud, Defendants placed in post offices and/or official depositories of the United States Postal Service matters and things to be delivered by the Postal Service, caused matters and things to be delivered by commercial interstate carriers or knew that the mail would be used in furtherance of their scheme, in violation of 18 U.S.C. § 1341.

46.     Defendants, in order to carry out it scheme to obtain money by false pretenses and to defraud, transmitted and received by wire, matters and things or knew that wire would be used in furtherance of their scheme, in violation of 18 U.S.C. § 1343.

47.     Defendants sent statements, bills, Explanations of Benefits or invoices to Class members via mail and/or wire.

48.     Defendants, either directly or indirectly, used various forms of wire communications, including the Internet through use of their web portal or the electronic sending of billing instructions to pharmacies, regarding the amount of coinsurance or copayments to collect from Class members.

49.     Moreover, Defendants utilized mail and wire in their numerous communications with pharmacies regarding services provided to Plaintiff and Class members and the amount Defendants would pay for such services.

CLASS ACTION COMPLAINT                              CASE NO.

50.     Finally, Defendants collected clawbacks via mail and/or wire from pharmacies.

51.     Defendants knowingly and intentionally made misrepresentations and concealed material facts in furtherance of their scheme and for the purpose of obtaining money from Plaintiff and Class members by false pretenses, representations or promises and for the purpose of deceiving Plaintiff and Class members.

52.     Defendants either knew or recklessly disregarded the fact that these misrepresentations and omissions were material.

53.     Defendants charged Plaintiff and Class members more than they owed for their prescription drugs, represented that Defendants are entitled to the amount charged, conditioned receipt for Plaintiff's and Class members' prescription drugs on payment of invoiced copayment and coinsurance amounts, failed to disclose that Defendants charge more than the price of the drugs, failed to disclose the existence of the clawbacks, prevented pharmacies from disclosing these facts, and have acted and are acting in violation of numerous laws as set forth herein.

54.     Defendants committed a separate violation of 18 U.S.C. § 1341 or 18 U.S.C. § 1343 each time Defendants charged or accepted payment for an amount greater than the amount to which Defendants was entitled in any of the following ways: (1) by submitting an invoice, statement, or Explanation of Benefits via the U.S. mail or wires; (2) by instructing a pharmacy to collect an excessive payment via the U.S. mail or wires; and/or (3) by collecting any coinsurance or copayment through the U.S. mail or wire including, but not limited to, charging a subscriber's or participant's credit or debit card during a telephone call or pursuant to an ongoing billing authorization.

55.     By submitting and receiving hundreds of thousands, if not millions, of such communications over the past several years, Defendants have engaged and continue to engage in a scheme to obtain money by false pretenses, representations,

or promises and a scheme to defraud that constitutes a pattern of racketeering activity.

56.     The intended victims of this pattern of pattern of racketeering activity are UnitedHealthcare plan participants and beneficiaries, including Plaintiff and members of the Class.

57.     During the past five years, Plaintiff has been subject to a copayment for the drugs she purchased through a retail pharmacy, as alleged above. When Plaintiff purchased these drugs at a retail pharmacy using her credit card, Defendants provided an electronic statement to her retail pharmacist showing the total cost of these drugs and the copayment charge Plaintiff would be billed for these drugs. Plaintiff paid the copayments as charged because she reasonably believed that Defendants were entitled to collect the amount invoiced and because she would not have received his prescription drugs had he not paid the amount invoiced.

### *Injury*

58.     As a result of Defendants' scheme to obtain money by false pretenses and scheme to defraud, Plaintiff and Class members paid the amounts charged as described and set forth above, thereby paying a higher coinsurance or copayment amount for their prescription drugs than they would have otherwise paid. Plaintiff and Class members reasonably relied on Defendants' representations and omissions in paying the amounts Defendants charged or set for these prescription drugs. Defendants have thus obtained money and property belonging to Plaintiff and Class members, and Plaintiff and Class members have been injured in their business or property.

### VII.   CLASS ACTION ALLEGATIONS

59.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the class defined as follows (the "Class"):

-13-

All citizens of the United States who are subscribers, members, participants, or beneficiaries of a health insurance policy or welfare benefit plan issued or administered by Defendants, purchased prescription drugs during the Class Period, and paid amounts in excess of the amounts that Defendants reimbursed the pharmacy that dispensed such prescription drugs.

60. Plaintiff also brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the subclass defined as follows (the "ERISA Subclass"):

All persons who are members of the Class by virtue of their status as participants or beneficiaries of a welfare benefit plan governed by ERISA.

61. The "Class Period" shall include five (5) years preceding the filing this Complaint up to and through entry of judgment.

*Typicality/Ascertainability*

62. Plaintiff's claims are typical of the claims of the members of the Class and ERISA Subclass because they arise out of the same conduct. The Class is ascertainable as all members of the Class are similarly affected by Defendants' wrongful conduct and can be determined by the application of objective criteria and a search of Defendants' business records.

*Commonality*

63. Common questions of law and fact predominate over questions affecting only individual Class and ERISA Subclass members. Common legal and factual questions include, but are not limited to:

(a) Whether Defendants breached their ERISA duties or violated RICO;

(b) Whether Defendants owed fiduciary duties to Class and ERISA Subclass members; and

-14-

CLASS ACTION COMPLAINT                                    CASE NO.

(c)     Whether the members of the Class and ERISA Subclass have sustained loss and, if so, the proper measure of damages or equitable relief.

### Numerosity

64.     The members of the Class and ERISA Subclass are so numerous that joinder of all members is impractical. There are likely hundreds of thousands of members in the Class and ERISA Subclass.

### Superiority

65.     A class action is superior to other available methods of relief for the fair and efficient group-wide adjudication of the claims raised.

66.     Absent class action relief, Class members would be forced to prosecute thousands of similar claims in different venues throughout the United States, which would waste the judicial resources and risk inconsistent outcomes.

67.     The prosecution of these claims as a class action will promote judicial economy.

68.     The claims raised herein are thus well suited for class action relief considering the individual amounts at issue and the commonality of such conduct.

69.     A class action would benefit both the Class and Defendants through a single resolution of similar or identical questions of law or fact.

### Adequacy

70.     Plaintiff is interested in the outcome of this litigation and understands the importance of adequately representing the Class.

71.     Plaintiff will fairly and adequately protect the interests of the Class sought to be certified and has no interests materially antagonistic to them.

72.     Class counsel have experience in class action and complex consumer litigation and are qualified to adequately represent the Class.

CLASS ACTION COMPLAINT                                     CASE NO.

# VIII.  <u>CAUSES OF ACTION</u>

## COUNT I

### ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3)
### for Violations of ERISA § 404, 29 U.S.C. § 1104
### (On Behalf of the ERISA Subclass)

73.     Plaintiff incorporates the allegations contained in the paragraphs above as if set forth herein.

74.     UnitedHealthcare and Optum are fiduciaries of each ERISA plan in which the members of the ERISA Subclass are participants or beneficiaries.

75.     UnitedHealthcare and Optum breached their fiduciary duty of loyalty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) by requiring members of the ERISA Subclass to pay more than the cost of the drugs they purchased and then pocketing the difference, while concealing this practice. UnitedHealthCare and Optum thus put their own interests ahead of the interests of the ERISA Subclass and did not act for the exclusive purpose of providing benefits to them.

76.     UnitedHealthcare and Optum's breach of the fiduciary duty of loyalty caused direct injury and losses to the ERISA Subclass.

77.     Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), Plaintiff seeks relief available under ERISA § 409, 29 U.S.C. § 1109, as set forth in the Prayer for Relief below.

78.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks an injunction and equitable relief, as set forth in the Prayer for Relief below.

## COUNT II

### ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3)
### for Violations of ERISA § 406(a), 29 U.S.C. § 1106(a)
### (On Behalf of the ERISA Subclass)

79.     Plaintiff incorporates the allegations contained in the paragraphs above as if set forth herein.

80.    ERISA § 406(a), 29 U.S.C. § 1106(a), provides, "A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect … furnishing of goods, services, or facilities between the plan and a party in interest," except as provided by ERISA § 408, 29 U.S.C. § 1108.

81.    A "party in interest" includes a plan fiduciary and "a person providing services to such plan." ERISA § 3(14)(A)–(B), 29 U.S.C. § 1002(14)(A)–(B).

82.    ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2) exempts from prohibition "Contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor."

83.    UnitedHealthcare and Optum are both fiduciaries and parties in interest with respect to the plans at issue here.

84.    UnitedHealthcare and Optum violated Section 406(a) by keeping the clawbacks described above, thus obtaining compensation that was unreasonable because it was not necessary for the establishment or operation of the plan, did not represent a reimbursement for expenses paid by UnitedHealthcare or Optum, nor was it agreed to by the plan sponsors, participants, or beneficiaries.

85.    The only exception to the prohibition of such compensation is if it was for services necessary for the operation of a plan and such compensation was reasonable. ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2).

86.    UnitedHealthcare and Optum have damaged Plaintiff and the ERISA Subclass in the amount of the clawbacks they received.

87.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), Plaintiff seeks relief available under ERISA § 409, 29 U.S.C. § 1109, as set forth in the Prayer for Relief below.

88.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks an injunction and equitable relief, as set forth in the Prayer for Relief below.

**COUNT III**

**ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3)**

**for Violations of ERISA § 406(b), 29 U.S.C. § 1106(b)**

**(On Behalf of the ERISA Subclass)**

89.    Plaintiff incorporates the allegations contained in the paragraphs above as if set forth herein.

90.    ERISA § 406(b), 29 U.S.C. § 1106(b), provides, "A fiduciary with respect to a plan shall not … deal with the assets of the plan in his own interest or for his own account, … [or] receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

91.    By receiving clawbacks, UnitedHealthcare and Optum have dealt with plan assets for their own accounts, and they have received consideration for their personal accounts from pharmacies that deal with the plans in connection with transactions involving the assets of the plans.

92.    UnitedHealthcare and Optum have damaged Plaintiff and the ERISA Subclass in the amount of the clawbacks they received.

93.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), Plaintiff seeks relief available under ERISA § 409, 29 U.S.C. § 1109, as set forth in the Prayer for Relief below.

94.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks an injunction and equitable relief, as set forth in the Prayer for Relief below.

**COUNT IV**

**ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3)**

**for Violations of ERISA § 405(a), 29 U.S.C. § 1105(a)**

**(On Behalf of the ERISA Subclass)**

95.    Plaintiff incorporates the allegations contained in the paragraphs above as if set forth herein.

CLASS ACTION COMPLAINT                                        CASE NO.

96.   ERISA § 405(a), 29 U.S.C. § 1105(a), provides, "a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan" in three circumstances.

97.   The first circumstance is when "he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach." ERISA § 405(a)(1), 29 U.S.C. § 1005(a)(1).

98.   The second circumstance is when "by his failure to comply with section 1104(a)(1) of this title [relating to the fiduciary duties of loyalty and prudence] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach." ERISA § 405(a)(2), 29 U.S.C. § 1005(a)(2).

99.   The third circumstance is when "he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." ERISA § 405(a)(3), 29 U.S.C. § 1005(a)(3).

100.   UnitedHealthcare and Optum, by arranging to receive clawbacks, took actions covered by each of these circumstances. They are therefore liable for each other's breaches as co-fiduciaries.

101.   UnitedHealthcare and Optum have damaged Plaintiff and the ERISA Subclass in the amount of the clawbacks they received.

102.   Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), Plaintiff seeks relief available under ERISA § 409, 29 U.S.C. § 1109, as set forth in the Prayer for Relief below.

103.   Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks an injunction and equitable relief, as set forth in the Prayer for Relief below.

CLASS ACTION COMPLAINT                                    CASE NO.

## COUNT V

### Violation of RICO, 18 U.S.C. §§ 1962(b), 1962(c)

### (On Behalf of the Class)

104.   Plaintiff incorporates the allegations contained in the paragraphs above as if set forth herein.

105.   This claim for relief arises under 18 U.S.C. § 1964(c).

### *Violation of 18 U.S.C. § 1962(b)*

106.   In violation of 18 U.S.C. § 1962(b), Defendants acquired and maintained control of the Enterprise as it relates to the provision of prescription drug benefits to Class members in terms of providing and/or charging for prescription drugs pursuant to or under the provisions of a UnitedHealthcare plan, through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B) and (5), by committing predicate acts of mail and wire fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, as set forth above.

107.   Specifically, Defendants acquired control of the Enterprise by claiming through their agreements that pharmacies would charge prices for prescription drugs provided to Class members, consistent with their agreements, and have maintained control of the Enterprise by ongoing misrepresentations and omissions regarding the payments to which Defendants are entitled, including the communications to Plaintiffs and Class members, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1343.

108.   Defendants acquired and maintained control of the Enterprise through a pattern of racketeering activity, that is, mail and wire fraud, as described above.

109.   Plaintiff and Class members have been injured in their business or property as a result of Defendants' control of the Enterprise in that Plaintiff and Class members have been charged and paid more than they should have paid for prescription drugs absent Defendants' fraudulent scheme.

CLASS ACTION COMPLAINT                                    CASE NO.

110.   As a result of such conduct, Plaintiff and Class members are entitled to the payment of actual and treble damages, attorneys' fees and costs and such other relief as the Court determines appropriate for this element of this Cause of Action.

### *Violation of 18 U.S.C. § 1962(c)*

111.   In violation of 18 U.S.C. § 1962(c), Defendants have associated with the Enterprise and have conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs, through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B) and (5), that is, mail and wire fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 2, as set forth above.

112.   Specifically, Defendants are associated with the Enterprise by the terms of a series of agreements and contractual relationships that permit Optum to be the exclusive provider of PBM services to Class Members, and thereby control the amounts charged and collected by pharmacies for prescription drugs under such plans.

113.   Defendants conducted or participated in the conduct of the affairs of the Enterprise with regard to the provision of services to United plan enrollees and participants pursuant to the terms of the agreements as set forth above, and also through the collection through pharmacies of copayments and coinsurance amounts from United plan subscribers and beneficiaries, including Plaintiff and Class members under false pretenses.

114.   Defendants' conduct or participation in the conduct of the affairs of the Enterprise was conducted through a pattern of racketeering activity, that is, mail and wire fraud, as described above.

115.   Plaintiff and Class members have been injured in their business or property as a result of Defendants' conducting or participating in the conduct of the Enterprise's affairs, in that Plaintiff and Class members have been charged and paid

CLASS ACTION COMPLAINT                                        CASE NO.

more than they would have paid for prescription drugs absent Defendants' fraudulent scheme.

116.   As a result of such conduct, Plaintiff and Class members are entitled to the payment of actual and treble damages, attorneys' fees and costs and such other relief as the Court determines appropriate for this element of this Cause of Action.

## IX.   <u>PRAYER FOR RELIEF</u>

Plaintiff, the Class, and the ERISA Subclass pray for:

1)   An order certifying the claims of the Class and ERISA Subclass under Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class and ERISA Subclass Representative, and her attorneys as Class and ERISA Subclass Counsel;

2)   An award of judgment on their claims;

3)   An award of relief pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2), including but not limited to restoration of their profits to the plans at issue, removal as fiduciaries of the plans, and any other relief the Court deems appropriate (ERISA Subclass only);

4)   An injunction pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), prohibiting Defendants from continuing their clawback scheme (ERISA Subclass only);

5)   An award of equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including but not limited to an accounting, a disgorgement of profits, a constructive trust, an equitable lien, restitution, and any other relief the Court deems just and proper (ERISA Subclass only);

6)   An award of reasonable attorneys' fees and costs pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1) (ERISA Subclass only);

CLASS ACTION COMPLAINT                                      CASE NO.

7)    An award of treble damages, attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c), and such other relief as the Court deems just and proper, for Defendants' violations of RICO; and

8)    An award of all other relief the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: November 23, 2016              WHATLEY KALLAS, LLP

                                      By: /s/ Alan M. Mansfield
                                      Alan M. Mansfield (Of Counsel)
                                      SBN: 125998
                                      amansfield@whatleykallas.com
                                      355 S. Grand Avenue, Suite 2450
                                      Los Angeles, CA 90071
                                      Tel: (310) 684-2504
                                      Fax: (855) 274-1888

                                      WHATLEY KALLAS, LLP
                                      Joe R. Whatley, Jr. (To Apply *Pro Hac Vice*)
                                      jwhatley@whatleykallas.com
                                      Edith M. Kallas (To Apply *Pro Hac Vice*)
                                      ekallas@whatleykallas.com
                                      1180 Avenue of the Americas, 20th Fl.
                                      New York, NY 10036
                                      Tel: (212) 447-7060
                                      Fax: (800) 922-4851

                                      WHATLEY KALLAS, LLP
                                      Henry Quillen (To Apply *Pro Hac Vice*)
                                      hquillen@whatleykallas.com
                                      159 Middle Street, Suite 2C
                                      Portsmouth, NH 03801
                                      Tel: (603) 294-1591
                                      Fax: (800) 922-4851

                                      STEEL, WRIGHT, GRAY
                                      & HUTCHINSON, PLLC
                                      Alex T. Gray (To Apply *Pro Hac Vice*)
                                      alex@swghfirm.com
                                      Nate Steel (To Apply *Pro Hac Vice*)
                                      nate@swghfirm.com
                                      Scott Poynter (Of Counsel) (To Apply *Pro Hac Vice*)
                                      scott@poynterlawgroup.com
                                      400 W. Capitol Avenue, Suite 2910
                                      Little Rock, AR 72201
                                      Tel: (501) 251-1587
                                      Fax: (501) 244-2614

-23-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MAURIELLO LAW FIRM
Thomas D. Mauriello (SBN 144811)
tomm@maurlaw.com
1181 Puerta Del Sol, #120
San Clemente, CA 92673
Tel: (949) 542-3555
Fax: (949) 606-9690

Attorneys for Plaintiffs and the Class

-24-